25CA1074 Peo in Interest of JL 11-26-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1074
El Paso County District Court No. 24JV30660
Honorable Lin Billings Vela, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of J.L., a Child,

and Concerning J.G.,

Appellant,

and

G.L.,

Appellee.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE YUN
Freyre and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 26, 2025

---

Kenneth R. Hodges, County Attorney, Melanie E. Gavisk, Assistant County Attorney, Colorado Springs, Colorado, for Appellee the People of the State of Colorado

Jenna L. Mazzucca, Counsel for Youth, Salida, Colorado, for J.L.

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant

Patrick R. Henson, Office of Respondent Parents' Counsel, Chelsea A. Carr, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellee G.L.

¶ 1     In this dependency and neglect case, J.G. (mother) appeals the judgment allocating parental responsibilities for J.L. (the youth) to G.L. (father).  We affirm.

## I.     Background

¶ 2     The El Paso Department of Human Services filed a petition in dependency and neglect alleging a history of domestic violence between mother and her partner, substance dependence by mother, and mental health concerns.  When the petition was filed, mother was incarcerated following a domestic violence incident in the presence of the youth.  The juvenile court adjudicated the youth dependent and neglected and adopted a treatment plan for mother.

¶ 3     Father, who resides out of state, appeared at the shelter hearing.  Mother disputed parentage and the court ordered genetic testing.  After the juvenile court adjudicated father as the youth's legal parent and ordered the birth certificate to be amended, father made a no-fault admission to the allegations in the petition.

¶ 4     Father then moved for an allocation of parental responsibilities (APR) with a step-up parenting time plan for mother.  The juvenile court granted the motion after a contested hearing.

1

## II. Standard of Review

¶ 5  Allocating parental responsibilities is a matter within the sound discretion of the juvenile court. *See In re B.R.D.*, 2012 COA 63, ¶ 15. When there is record support for the court's findings, its resolution of conflicting evidence is binding on review. *Id.* However, whether a court has applied the correct legal standard presents a question of law that we review de novo. *Id.*

## III. Reasonable Efforts to Rehabilitate Mother

¶ 6  Mother first contends that the Department had an obligation to make reasonable efforts to rehabilitate her and reunite the family. Our inquiry, however, is not whether the Department was required to make reasonable efforts while the case was pending but instead whether the juvenile court was required to make findings about those efforts as part of its judgment allocating parental responsibilities. *See* C.A.R. 1(a) (explaining that our jurisdiction is limited to review of final, appealable judgments or orders). Mother refers us to *People in Interest of A.S.L.*, 2022 COA 146, ¶¶ 16, 20, to support her claim that reasonable efforts findings were required. But mother misreads *A.S.L.*'s holding in this regard. In *A.S.L.*, a division of this court specifically limited its holding to

circumstances "when the juvenile court, in lieu of terminating a parent's rights, enters an APR to a nonparent." *Id.* at ¶ 20. Here, the court granted an APR to father after his parentage was adjudicated.

¶ 7     Mother also contends that she "was entitled to a reasonable period of time to demonstrate fitness with Department support and assistance." However, the court was not required to make findings regarding mother's parental fitness when it determined that father's proposed APR was in the youth's best interests. *People in Interest of L.B.,* 254 P.3d 1203, 1208 (Colo. App. 2011) (APR must be determined in accordance with a youth's best interests; finding of parental unfitness not required for an APR for a youth adjudicated dependent or neglected); *see* § 19-3-507(1)(a), C.R.S. 2025. Therefore, mother's contention that she was not given a reasonable period of time to become fit must fail.

IV.   Fitness Findings Regarding Father

¶ 8     Mother next contends that the court erred by granting an APR to father "without first requiring the Department to demonstrate that father was, indeed, a fit parent." But mother provides no

authority for her claim that the Department had any obligation to do so when father — and not the Department — moved for an APR.

¶ 9 To the extent mother contends that the juvenile court erred by finding that father was a fit parent, we discern no error. The court found that father was fit, was able to meet the youth's needs, and maintained significant psychological ties with the youth. The court found that it was in the best interest of the youth to grant the APR order proposed by father and supported by the youth.

¶ 10 The record supports the court's findings. Father, who the juvenile court found credible, testified about his employment, housing situation, and specific plans to meet the youth's educational and medical needs. The youth, who the court also found credible, expressed his desire to live with father and testified that he felt safe with father during extended unsupervised family time held during the case.

¶ 11 Furthermore, it was uncontested that father complied with his treatment plan, which required him to cooperate with the Department and strengthen his parental relationship with the youth. *See People in Interest of N.G.G.*, 2020 COA 6, ¶¶ 18-19 (holding that a parent may be found to have regained fitness after

an adjudication when the parent complies with the treatment plan and is able to safely parent). In addition, father addressed the concerns that necessitated the Department's intervention by asserting parentage, being adjudicated the youth's legal father, and requesting formal custody orders that would allow him to protect the youth.

¶ 12    Although mother objected to the APR and raised concerns about father's fitness, the court did not find her testimony credible. It is within the juvenile court's purview to weigh evidence, including conflicting evidence, and determine witness credibility. *See In re Marriage of Kann*, 2017 COA 94, ¶ 36 ("[O]ur supreme court has . . . expressed unbridled confidence in trial courts to weigh conflicting evidence."); *see also Carrillo v. People*, 974 P.2d 478, 486 (Colo. 1999) (recognizing "the trial court's unique role and perspective in evaluating the demeanor and body language of live witnesses" and "discourag[ing] an appellate court from second-guessing those judgments based on a cold record").

## V.    Disposition

¶ 13    The judgment is therefore affirmed.

JUDGE FREYRE and JUDGE PAWAR concur.